**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

SHAWNA ROBBINS, an individual, on behalf )
of herself and all others similarly situated, )
                                          )
                 Plaintiff, )
                                          )
vs.                                     )     Case No. 07-cv-145-TCK-TLW
                                          )
BLUEHIPPO FUNDING, LLC, a Maryland )
corporation, and BLUEHIPPO CAPITAL, LLC, )
a Nevada corporation,                      )
                                          )
                Defendants. )

**REPORT AND RECOMMNEDATION ON PLAINTIFF'S MOTION TO ENFORCE
SETTLEMENT AGREEMENT**

       This matter has been referred to the undersigned United States Magistrate Judge for a

Report and Recommendation as to plaintiff's Motion to Enforce Settlement Agreement.  [Dkt. #

# 58, 60].  On August 14, 2009, the undersigned conducted an evidentiary hearing.  Based on the

evidence and argument presented at the hearing and the parties' submissions, the undersigned

RECOMMENDS that the Motion to Enforce be GRANTED as set forth herein.

**FACTUAL BACKGROUND**

       Plaintiff Shawna Robbins filed the present class action lawsuit against defendants,

BlueHippo Funding, LLC and BlueHippo Capital, LLC, on January 23, 2007.  [Dkt. # 58].  An

initial settlement conference was held on February 15, 2008, after which negotiations continued

for almost ten months, culminating in a second settlement conference on December 15, 2008.  A

few days prior to the second settlement conference, on December 12, 2008, counsel for

defendants forwarded to counsel for plaintiff a draft Stipulation of Settlement, a Final Judgment

and Order of Dismissal, and a Preliminary Approval of Settlement, Notice and Hearing Order.

Hearing Ex 7.  These documents originated with Andrew Campbell, general counsel for Blue

Hippo Funding, LLC, see Hearing Exs. 4 and 7, are forty-four pages in length, are comprehensive, and contain only a few blank spaces for various dates and the amount of any attorney fees to be awarded plaintiff's counsel.  Hearing Ex. 7.  Twelve minutes after forwarding these documents to plaintiff's counsel, defendants' counsel forwarded the same documents to Adjunct Settlement Judge Oliver Howard (ASJ Howard), stating ". . . here is the form of settlement documents we have been working on."  Hearing Ex. 8.  Some of the essential terms set forth in the Stipulation of Settlement are as follows:

1.  "[I]t is hereby stipulated and agreed by the Representative Plaintiff, on her behalf and on behalf of the Settlement Class, and the Defendants, through their duly authorized counsel, that the Action and the Released Claims (as defined below) be settled, compromised, and dismissed on the merits and with prejudice as to the Defendants and without costs as to the Representative Plaintiff, the Settlement Class or the Defendants, subject to the approval of the Court, on the following terms and conditions . . ." Hearing Ex. 7 at 3.

2.  The parties "stipulate to the certification of the Settlement Class, defined in Section I(U) below. . .." Id. at 3.

3.  The key terms are defined in Section I. of the agreement.  Id. at 3-7.

4.  The parties are, after execution, to submit the agreement to the court and apply for preliminary approval of the agreement, among other things.  Id. at 7-8.

5.  After preliminary approval, defendants are to distribute the Class Notice and publish the Publication Notice.  Id. at 8-9.

6.  The stipulation provides for the submission of objections from the Class Members and allows Class Members to opt out of the class.  Id. at 9-10.

7.  The stipulation provides for the entry of a Final Judgment and details what is to be included in the Final Judgment.  Id. at 12.

8.  The stipulation provides that it is to become final upon approval by the Court, entry of the Final Judgment, and expiration of the appeal time.  Id. at 13.

9.  Class Members receive consideration as a part of the stipulation and defendants obtain a dismissal of all claims.  Id. at 14, 17-18.

10. Defendants may terminate the agreement if the Court "rejects, materially modifies, or denies approval of any material provision" of the stipulation.  Id. at 19.

After the December 15th settlement conference, with the consent of the parties, ASJ Howard advised Magistrate Judge Cleary that a settlement had been reached. [Dkt. # # 93 at 2, 94 at 2]. Magistrate Judge Cleary filed a Settlement Conference Report, which ordered the parties to file their request for approval of the settlement within thirty (30) days from December 18, 2008. [Dkt. # 54]. Neither party filed any pleading to correct or object to the Settlement Conference Report. [Dkt. # 58 at 5]. Regarding the settlement conference, ASJ Howard testified as follows:[1]

1. that it was his "recollection that a settlement was reached on all issues on December 15;"[2]

2. that "based on what the parties said at the time, the parties reach[ed] an agreement on all the terms and conditions"; and

3. that a written document was contemplated that would incorporate the terms of the agreement.

[Dkt. # 93 at 3, # 94 at 2, 3].

On December 16 and 17, 2008, the two days immediately following the settlement conference, counsel for the parties exchanged emails regarding a list of potential plaintiffs to serve as class representatives. Hearing Ex. 1. There is no indication in the emails, or otherwise, that the settlement agreement was contingent upon defendants' agreeing to plaintiff's proposed class representatives. There is also no indication in the emails, or otherwise, that negotiation of the terms of the settlement agreement was continuing or that the parties were doing anything other than proceeding under the assumption that a settlement had been reached. Id.

---

[1] Plaintiff requested, pursuant to LCvR 16.2(c), that the court call ASJ Howard as a witness at the evidentiary hearing. The undersigned granted the request; however, ASJ Howard was not available on the hearing date. Rather than postpone the hearing, the parties agreed to submit written questions to be answered by ASJ Howard in writing and under oath. [Dkt. # # 91, 92, 93, 94].

[2] ASJ Howard also included, as an exhibit to one of his affidavits, a "written statement or notes" memorializing the agreement reached at the settlement conference. [Dkt. # 93 at 4, Ex. A]. The exhibit includes references to the filing of an amended complaint, the amount of attorneys' fees and expenses, and the contemplated interest to be charged defendants if the settlement were appealed. Id.

On December 23, 2008, counsel for plaintiff forwarded to counsel for defendant a "schedule of events" that contained "proposed deadlines of the things which need to happen prior to a hearing on the final settlement approval." Hearing Ex. 9. On December 30, 2008, counsel for plaintiff emailed counsel for defendant asking: "Will we be filing the Stipulation before year end (tomorrow)?" Hearing Ex. 24. There is no indication that defendants' counsel, during this period, ever took the position that the parties had not consummated a settlement agreement.

On January 6, 2009, defendants' counsel emailed plaintiff's counsel "a draft stipulation, redlined with the changes we talked about." Hearing Ex. 25. The changes were as follows:

1. Paragraph R on page 5, which defined the term "Purchase Documents" was deleted;

2. A blank in numbered paragraph 2 on page 6 was filled in; and

3. The maximum amount of attorney fees to be paid by defendants was added to paragraph A on page 18 along with some other language related to the attorney fees amount.

Id. On January 8, 2009, plaintiff's counsel responded, with only two changes, one to correct a typographical error and a second to reflect the fact that the case had been reassigned to the undersigned magistrate judge. Hearing Ex. 2. On January 9, 2009, counsel for plaintiff emailed ASJ Howard's assistant (Heather Aldridge) and defendants' counsel indicating that plaintiff's counsel had delivered to defendants the day before "what we consider to be a final draft of a Stipulation." Hearing Ex. # 10. Defendants' counsel made no effort to correct the statements made by plaintiff's counsel.

On January 13, 2009, plaintiff's counsel emailed defendants' counsel asking, "Has your client signed the Stipulation yet? When will they?" Hearing Ex. 27. Twelve minutes later, defendants' counsel emailed back stating, "I don't know if they signed yet or not. I talked to Campbell late Friday. I'll check again." Hearing Ex. 28. Defendants' counsel's response leaves the clear impression that the Stipulation was final and had been agreed to by all of the parties and

merely needed to be signed.  On January 20, 2009, defendants' counsel forwarded to plaintiff's counsel, by email, a "revised stipulation incorporating language on page 15 regarding settlement of the other pending class action."  Hearing Ex. 11.  Defendant's counsel also stated that "we need to figure out how the amended complaint and adding additional class reps will work and draft language regarding that process into the stipulation."  Id.  Plaintiff's counsel responded on January 22, 2009, stating, "We are okay with that insert."  Id.  Plaintiff's counsel also provided some suggestions regarding the filing of an amended complaint and the class representatives.  Id.

On January 26, 2009, counsel for the parties exchanged additional emails and a revised Stipulation.  Hearing Ex. 13.  All of the revisions related to:  (1) the proposed amended complaint, (2) the naming of class representatives, or (3) the inability of a class member to receive the benefits of both the settlement in this case and the settlement of other class actions against defendants.  Id. These communications indicate that the parties were merely working through the manner in which the existing settlement agreement was to be carried out, not that the parties were attempting to negotiate the essential terms of the settlement agreement itself.

On January 29 and 30, 2009, plaintiff's counsel inquired as to when an executed settlement agreement should be expected from defendants' counsel.  Hearing Exs. 29, 30.  On January 30, 2009, defendants' counsel responded in two separate emails, stating:

> I'm in depositions today.  I will try to get answers by end of day.  Monday latest.
>
> . . . .
>
> Are you planning on circulating the amended complaint that will be exhibit to the stip?  Also there is a blank in jen's last draft of the stip re identifying the class reps.  Are you going to fill in that blank?

Hearing Ex. 31.  Plaintiff's counsel responded within thirty minutes answering: "yes and yes." Id.  On February 4, 2009, plaintiff's counsel, as requested by defendant's counsel, forwarded the Stipulation to defendants' counsel with the accompanying exhibits, including an amended

complaint, and with the names of the class representatives inserted.  Hearing Ex. 14.  On February 6, 2009, Plaintiff's counsel inquired as follows of Defendants' counsel: "I understand Jennifer sent the proposed Amended Complaint to you earlier this week.  What else do you need so we can finally close this matter?"  Hearing Ex. 32.  There was no response.

On February 16, 2009, counsel for plaintiff again inquired as to the status of the Stipulation and the Amended Complaint.  Hearing Ex. 15.  By the following day, plaintiff's counsel was losing patience and sent the following email:

> What is the status of your client returning an EXECUTED settlement agreement this week.  Please advise us and let us know if it will be necessary for us to file a Motion to Enforce.  Please also advise us if you are waiting on any action by us. It is my understanding the ball has been in your and your client's court for some time now.

Hearing Ex. 33.  On February 19, 2009, after receiving no response, plaintiff's counsel informed defendants' counsel that plaintiff did intend to file a Motion to Enforce (a draft of the motion was provided to defendants' counsel).  Hearing Ex. 16.  The same afternoon, defendants' counsel responded as follows:  "we have a call in to BlueHippo and hope to be able to resolve this without the necessity of your filing a motion to enforce.  I'll get back to you as soon as I hear from our client."  Hearing Ex. 17.  After being informed that plaintiff's counsel was only willing to wait until the following morning, defendants' counsel emailed: "Jennifer, I am trading calls with Andrew and will get back to you as soon as I can.  I guess you need to do what you think you need to do, but it seems this is close to resolution."  Hearing Ex. 19.  As with the prior correspondence between the parties' counsel, nothing in defendants' counsel's emails indicated that the parties had not reached a settlement.  To the contrary, defendants' counsel appeared to be seeking more time in order to obtain defendants' signature on the final documents.  A few hours later, apparently after speaking with defendants, defendants' counsel emailed again, stating, "your plaintiffs are still problematic.  I will send you a chart showing the problems tomorrow

morning." Hearing Ex. 20. Defendants' counsel did not identify any other issues. Plaintiff's response was immediate, "I chose those representatives based on an email from Tamara on January 26, 2009 that she "[thought] BlueHippo would agree—for settlement purposes only—that the following could made adequate class reps." Hearing Ex. 21. The following morning, plaintiff's counsel again reached out to defendant's counsel:

> I just left you a voice message. Prior to filing the Motion, I wanted to discuss the reasons why the proposed class representatives are still problematic, even though I chose them in reliance on Tamara's e-mails that those individuals would be okay. If I haven't heard from you before 10:30, I am going to go ahead and file the Motion."

Hearing Ex. 22.

On February 24, 2009, Magistrate Judge Cleary held a conference call with the parties to determine why approval papers had not been filed. [Dkt. #57]. Defendants raised concerns over the proposed subclass representatives, but nothing else, and there is no indication that additional negotiations regarding the terms of the settlement agreement were contemplated. [Dkt. #57]. Judge Cleary ordered defendants to provide Plaintiff with a list of all Class Members, which defendants provided to plaintiff on March 6, 2009. Hearing Ex. 23. Four days earlier, on March 2, 2009, plaintiff had already provided defendants with a list of representatives for the subclass. Hearing Ex. 3. As a result, on March 6, 2009, plaintiff's counsel emailed defendants' counsel asking if defendants had considered the list of class representatives that had been emailed earlier in the week. Hearing Ex. 35. Defendants' counsel responded around 3:30 p.m. that "[w]e forwarded Corey's email to our client and haven't heard back yet." Id. Defendants' counsel provided no indication that defendants' believed the parties were continuing to negotiate the settlement agreement, as opposed to working together to determine how to carry out the agreement by selecting appropriate class representatives. Nonetheless, at 5:04 p.m. of the same

day, defendants' counsel forwarded, without comment, a letter from Andrew Campbell (General

Counsel of BlueHippo) to plaintiff's counsel.  Hearing Ex. 4.  In his letter, Mr. Campbell took

the position that no settlement agreement had been reached.  Id.  On March 9, 2009, plaintiff

filed her Motion to Enforce.  [Dkt. #58].

During the evidentiary hearing, plaintiff called two witnesses, Jennifer Sherrill and

William B. Federman, both attorneys who have entered appearances on behalf of plaintiff in this

case.  Ms. Sherrill testified as follows:

1. She has been involved in this case from the outset and assisted in drafting the Complaint.

2. She was communicating with defendants' counsel in January, 2009, when Exhibit 2 was exchanged between counsel, and defendants' counsel never advised here that the parties did not have a settlement agreement or that there were any material terms remaining to be negotiated.

3. She attended the December 15, 2008 settlement conference by telephone and participated in the negotiations.  The only issues that were addressed during the settlement conference were a "minor" issue regarding the named plaintiff and her adequacy as a class representative and the issue of attorney fees.

4. Some modifications were made to the Stipulation prior to the December 15, 2008 settlement conference in order to address concerns that the settlement might not be approved by the Court.

5. During the time period that Hearing Exhibit 11 was exchanged between counsel, defendants' counsel never advised that there was not a settlement agreement between the parties.

6. She discussed the filing of the Amended Complaint with counsel for defendants and both parties agreed that the Amended Complaint would be filed "for settlement purposes only" and that the Amended Complaint would not become an operative pleading if the settlement was not approved by the Court.  Exhibit 13 was a result of that agreement.

7. Defendants counsel, including defendants' in-house counsel (Mr. Campbell), never informed her, prior to receipt of Mr. Campbell's letter, that there was no settlement agreement or that defendants' had reserved pre-approval rights regarding the naming of class representatives.

Mr. Federman testified as follows:

1. He has been involved in this case from the outset, including the initial factual investigation.

2. At the December 15 settlement conference, there were only two issues on which the parties had not yet agreed, one of which was the issue of attorney fees.

3. The fact that a settlement agreement had been reached was personally confirmed to him by defendants' counsel at the settlement conference.

4. Prior to receipt of Mr. Campbell's letter and after the settlement conference, Mr. Federman had at least two conversations with defendants' counsel in which defendants' counsel confirmed that the parties had a settlement agreement.  The first was on January 30, 2009, when Mr. Federman asked defendants' counsel if defendants were attempting to get out of the settlement. Defendants' counsel informed Mr. Federman at least twice during that discussion that "we have an agreement."

Defendants did not call any witnesses.

## DEFENDANTS' POSITION

At the evidentiary hearing, defendants' counsel articulated the following bases for resisting plaintiff's Motion to Enforce:

1. The parties agreed that there would be no enforceable settlement until a written agreement was executed by all parties;

2. The parties never actually reached an agreement, as is reflected in Hearing Exhibits 2, 11, and 12;

3. The parties did not agree on the class representatives or the timing of filing an amended complaint; and

4. The Court will not approve the class representatives, even if an agreement otherwise exists.

## ANALYSIS

"A [federal] trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it."  U.S v. Hardage, 982 F.2d 1491, 1496 (10th Cir. 1993).  However, "where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing."  Id. In determining whether a settlement agreement was consummated, a federal court is to apply state contract law.  U.S. v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000) (citing Carr v. Runyan, 89 F.3d 327, 331 (7th Cir. 1996)).

9

Under Oklahoma law, a settlement agreement is a contract, which may be oral or written. Russell v. Bd. of County Comm'rs of Carter County, 1 P.3d 442, 443 (Okla. Ct. App. 2000). Moreover, settlement agreements have long been favored and "will be enforced absent fraud, duress, undue influence or mistake." Id. See also Tulsa City Lines v. Mains, 107 F.2d 377, 380 (10th Cir. 1939) ("The inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims."). Since defendants do not argue fraud, duress, or undue influence, the only issues are whether there was "an offer, acceptance and a meeting of the minds on terms," Coulter v. Carewell Corp. of Okla., 21 P.3d 1079, 1083 (Okla. Ct. App. 2001), and, if so, whether the agreement is sufficiently definite and certain such that it identifies the essential commitments of the parties. Vice v. Conoco, Inc., 150 F.3d 1286, 1291 (10th Cir. 1998) (under Oklahoma law "an agreement which is not sufficiently definite to enable a court to ascertain the parties' intentions with reasonable certainty does not constitute an enforceable contract.") (quoting Dunn v. Dunn, 391 P.2d 885, 887 (Okla.1964)); Nash v. Buchanan, 716 F.2d 766, 768 (10th Cir. 1983); Heldenbrand v. Stevenson, 249 F.2d 424, 427 (10th Cir. 1957).

Here, the evidence overwhelmingly establishes that the parties reached a settlement agreement. Thus, the undersigned will first address how and when that agreement was consummated, while at the same time addressing defendants' argument that a signed writing was a condition precedent (that was not met) to the formation of a binding settlement agreement. Thereafter, the undersigned will specifically address each of defendants' remaining arguments and identify the terms of the parties' final agreement.

"The fact that the parties may have contemplated the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply that they had not already bound themselves to a definite and enforceable contract whose terms could be changed only by

mutual consent." Pierce v. Petroleum Corp. v. Hales, 294 P. 160, 163 (Okla. 1930) (quoting Post v. Davis, 52 P. 903 (Kan. Ct. App. 1898)). See also East Central Oklahoma Elec. Co-op, Inc. v. Oklahoma Gas & Elec. Co., 505 P.2d 1324, 1328 (Okla. 1973). The facts in Pierce closely parallel the situation here:

> The evidence is sufficient to show that the terms of the contract were agreed to on March 5, 1925, by Mr. Fell and Mr. Hales, representing themselves and the other parties with like interests, and Mr. Kistler, who purported to act for the defendant. The understanding was reached by using as a basis therefor a division agreement which Mr. Fell had, and making such changes therein as met the minds of the parties negotiating. It was not convenient to prepare the written agreements on that day, but in accordance with the understanding they were prepared within a day or two, signed by each of the plaintiffs and mailed to Kistler at Tulsa, Okl., and were by him, according to the understanding of March 6, forwarded to the New York office of the defendant to be formally executed by the signature of the president of the defendant company. Kistler did not sign the agreements, but it is to be borne in mind that we are not discussing an instrument which is required under any statute to be executed by any certain officer of a corporation in order to be effective.

Id. at 162. After reciting these facts, the court, in Pierce, found that the parties had entered into an enforceable agreement, even though a formal settlement document had not been executed. Id. at 163. In reaching its decision, the court looked to the parties' intention in an effort to determine whether a written agreement was merely "contemplated," in which case an agreement had been consummated, or whether a written agreement was a condition precedent to the settlement agreement, in which it had not. Id. at 163.

ASJ Howard testified that the parties reached a complete agreement at the December 15, 2008 settlement conference and that "it was contemplated that a written document would be prepared incorporating the terms of the settlement." [Dkt. # 94 at 2]. ASJ Howard did not testify, nor did anyone else, that such an agreement was a condition of the settlement. In addition, after the settlement conference, Magistrate Judge Cleary entered an order stating that the parties had reached an agreement and had thirty (30) days to file a motion seeking approval.

Magistrate Judge Cleary did not note the existence of any conditions that needed to be met in order for the agreement to become effective, and defendants did not object to Magistrate Judge Cleary's order.  In addition, the only witnesses to appear at the August 14, 2009 hearing (William Federman and Jennifer Sherrill) unequivocally testified that a complete agreement between the parties was reached at the December 15 settlement conference.  Specifically, Mr. Federman testified that prior to the settlement conference, only two issues remained, one of which was the amount of attorney fees.  This testimony is consistent with the draft Stipulation forwarded by defendants to plaintiff a few days prior to the settlement conference.  See Hearing Ex. 7.  In fact, the draft Stipulation, in the context of the evidence presented, is strong evidence of the terms of the parties' agreement, and those terms are sufficiently definite and certain so as to identify the essential commitments of the parties.  See supra at 2-3. Mr. Federman further testified that on at least two occasions after the settlement conference, defendants' counsel confirmed to him that the parties had a settlement agreement.  No credible evidence contradicting Mr. Federman's, Ms. Sherrill's or ASJ Howard's testimony was presented.  Thus, substantial and convincing evidence exists that the parties reached an oral settlement agreement on December 15, 2008, that the terms of the settlement agreement are reflected in Hearing Ex. 7, and that although the parties contemplated a written settlement agreement, the execution of such an agreement was not a condition precedent to the consummation of the settlement.[3]

In support of their argument that the parties never reached an agreement, defendants cite Hearing Exs. 2, 11, and 12.  These exhibits also address the third argument raised by defendants, that because there was no agreement on class representatives or on the timing of the filing of an amended complaint, there was no settlement agreement.

---

[3] The evidence establishes that the parties later modified their agreement.  These modifications are addressed in conjunction with the undersigned's consideration of defendants' remaining arguments below.

Hearing Ex. 2 is a January 8, 2009 email from plaintiff's counsel accepting defendants' suggested changes to the original draft Stipulation, (<u>see</u> Hearing Ex. 25), correcting one typographical error, and changing the case caption to reflect the re-assignment of this case to the undersigned.   Hearing Ex. 2 does not assist defendants.   At most, it evidences a written modification, agreed to by both parties, to the terms of the original draft Stipulation.[4]

Hearing Exs. 11 and 12 can be addressed together.  Hearing Ex. 11 is a January 22, 2009 email from defendants' counsel to plaintiff's counsel attaching another version of the draft Stipulation and raising questions about the filing of the Amended Complaint and the class representatives.   Even when viewed in the light most favorable to defendants (which is not required), this email can only be characterized as a request by defendants to alter the existing settlement agreement (as reflected in Hearing Ex. 2).   In response, plaintiff's counsel agreed to defendant's request and agreed to the only change made to the Stipulation by defendants.   Thus, Hearing Ex. 11 reflects a written modification to the terms of the settlement agreement, and as of January 22, 2009, represented the agreement of the parties.

In Hearing Ex. 11, Plaintiff's counsel also made suggestions regarding the amended complaint and the class representatives.  Hearing Exhibit 12 is a response to plaintiff's counsel's suggestions.  In Hearing Ex. 12, defendants' counsel confirms what defendants "agreed" to at the settlement conference regarding the Amended Complaint (i.e., that the Amended Complaint would be filed if the settlement were approved) and provides some proposed class representatives to be added to the Stipulation.   There is no evidence that an agreement as to either issue was a condition of the settlement.   Rather, the communications between counsel

---

[4] Even assuming Hearing Ex. 2 is evidence that the parties had not, as of January 8, reached an agreement, the sending of this email by plaintiff's counsel was an acceptance of the terms proposed by defendants and consummated the parties' settlement agreement.

evidence a belief by the parties that the issues related to the amended complaint and the class representatives were related to the implementation of the settlement agreement, not its formation.

Nine days after receiving Hearing Ex. 12, plaintiff 's counsel forwarded to defendant's counsel Hearing Ex. 14, which includes a redlined Stipulation, with all the necessary exhibits attached, and addresses all outstanding issues between the parties.   All parties' counsel confirmed at the hearing that Hearing Ex. 14 was the latest written document exchanged between the parties, and counsel for defendants' acknowledged that absent defendants' arguments, this document reflected the understanding of the parties.   Irrespective of defendants' counsel's acknowledgment, the undersigned finds that based on the facts set forth above and the foregoing analysis, Hearing Ex. 14 represents the final agreement of the parties.

Finally, defendants argue that there was no settlement agreement, because the Court will not approve the class representatives.  This argument should be rejected.  The parties' agreement specifically provides that it is subject to court approval.   If the Court rejects the class representatives proposed by plaintiff or any other material terms of the Stipulation, then, by its own terms, the parties' agreement will terminate and not bind either party.

Accordingly, defendant's position has little, if any, merit,[5] and the undersigned **RECOMMENDS** that Plaintiff's Motion to Enforce Settlement be granted and that an order be entered finding that Hearing Exhibit 14, as redlined, reflects the final settlement agreement of the parties in this matter.

## OBJECTIONS

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), a party may file specific written objections to this Report and Recommendation.  Objections must be filed with the Clerk

---

[5] The issue of which exhibit reflects the parties' final agreement could, conceivably, have been the subject of a good faith dispute, but that was not the issue raised by defendants.

of the District Court for the Northern District of Oklahoma within ten (10) days of being served

with a copy of this Report and Recommendation.  See Fed. R. Civ. P. 6 (as to computation of

time periods).  If specific written objections are timely filed, the district judge assigned to this

case will:

> make a *de novo* determination upon the record, or after additional
> evidence, of any portion of the magistrate judge's disposition to
> which specific written objection has been made in accordance with
> this rule.  The district judge may accept, reject, or modify the
> recommended decision, receive further evidence, or recommit the
> matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b); see 28 U.S.C. § 636(b)(1).

The  Court  of  Appeals  for  the  Tenth  Circuit  has  adopted  a  "firm  waiver  rule"  in

connection with appeals from orders adopting a Magistrate Judge's report and recommendation.

"[T].he  failure  to  make  timely  objections  to  the  magistrate's  findings  or  recommendations

waives appellate review of factual and legal questions."   United States v. One Parcel of Real

Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656,

659 (10th Cir. 1991)).  **Thus, a timely, specific and written objection is necessary to preserve**

**an issue for *de novo* review by the assigned district judge and for appellate review by the**

**court of appeals.  See** Thomas v. Arn, 474 U.S. 140 (1985); Haney v. Addison, 175 F.3d 1217

(10th Cir. 1999); and Talley v.Hesse, 91 F.3d 1411 (10th Cir. 1996).

Dated this 25th day of September, 2009.


_____
T. Lane Wilson
United States Magistrate Judge