IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHAWNA ROBBINS, an individual, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> BLUEHIPPO FUNDING, LLC, a Maryland corporation, and BLUEHIPPO CAPITAL, LLC, a Nevada corporation, <br><br> Defendants. | Case No. 07-cv-145-TCK-TLW |

**DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), Defendants, BlueHippo Funding, LLC and BlueHippo Capital, LLC (collectively, "BlueHippo"), respectfully object to Magistrate Judge Wilson's *Report and Recommendation on Plaintiff's Motion to Enforce Settlement Agreement* (the "*Report and Recommendation*"). Specifically, BlueHippo objects to: (1) the finding that the evidence establishes that the parties to this case reached a settlement agreement, see *Report and Recommendation*, Doc. 98, at 10; (2) the recommendation that Plaintiff's Motion to Enforce Settlement be granted, see id. at 14; and (3) the recommendation that Hearing Exhibit 14, as redlined, reflects the final settlement of the parties in this matter, see id. In support of its objections, BlueHippo states as follows:

**A.   The Evidence Demonstrates the Parties Did Not Mutually Assent to All Material Terms of a Final Settlement Agreement**

BlueHippo first objects to the Magistrate Judge's finding that a settlement agreement was reached, because BlueHippo and Plaintiff failed to mutually assent to all material terms. In order for mutual assent to exist, "the parties [must] agree upon the same thing in the same

sense." 15 Okla. Stat. § 66. Unless an acceptance of an offer is "unconditional, identical to the offer, and does not modify, delete or introduce any new terms into the offer," then the "acceptance will not bind the offeror." Ollie v. Rainbolt, 1983 OK 79, ¶ 19, 669 P.3d 275, 280. Without mutual assent to all material terms of a settlement agreement, there is no settlement agreement for the Court to enforce. See In re De-Annexation of Certain Real Property from City of Seminole, 2009 OK 18, ¶ 8, 204 P.3d 87, 93-94; Sarber v. Harris, 1962 OK 4, ¶ 7, 368 P.2d 93, 96 ("No contract, whether in writing or by parol, can be complete without mutual assent of the parties to all of its material terms." (emphasis added)). As the Oklahoma Supreme Court explained in In re De-Annexation:

> The trial court impermissibly composed a settlement agreement for the parties by supplying terms on which there had been no final agreement. It thus converted ongoing, yet deteriorating, negotiations into a contract. That piecemeal approach to contract formation ignores the requirements of offer and acceptance and the requirement of mutual assent to the terms of a contract.

In re De-Annexation, 2009 OK 18, ¶ 21.

Magistrate Judge Wilson's *Report and Recommendations* impermissibly traverses the boundary between a final settlement agreement in which the parties have agreed to all material terms, and an unenforceable "agreement to agree," which requires the Court to engage in speculation and conjecture to supply the terms of the agreement. Id.; see also Am. Automated Theaters, Inc. v. Hudgins, Thompson, Ball & Assocs., Inc., 1973 OK CIV APP 15, ¶ 8, 516 P.2d 565, 567 ("An 'agreement to agree' standing alone is too vague to be enforceable."). The evidence clearly shows that Plaintiff and BlueHippo did not assent to *all* material terms at either the December 15, 2008 settlement conference, or at any time thereafter. Thus, even assuming the parties left the December 15, 2008 meeting *believing* that all terms had been settled (which BlueHippo disputes), because subsequent negotiations quickly and unequivocally demonstrated

this was not the case, an enforceable contract does not exist. 1 <u>Corbin on Contracts</u>, § 107 (1963) ("A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think they have made a contract; they must have expressed their intentions in a manner that is capable of understanding.").

First, as of January 20, 2009, the parties had not reached an agreement on how to handle similar claims made against BlueHippo by class litigants in a case pending in the Northern District of California. (<u>See</u> Doc. 75-2, E-mail from Tamara Pullin to Jennifer F. Sherrill, dated January 20, 2009, 5:18 p.m.). Also, as of January 26, 2009, the parties had not yet agreed on how to handle the filing of an Amended Complaint by Plaintiff. (<u>See</u> Doc. 75-3, E-mail from Tamara Pullin to Jennifer F. Sherrill, dated January 26, 2009, 10:00 a.m.). Additionally, as of the time Plaintiff filed the Motion to Enforce (and through the present date), the parties still have not reached an agreement on which individuals would make suitable class representatives. Indeed, many of the drafts of the Stipulation of Settlement have blank spaces where the class representatives should be listed. (<u>See</u> Doc. 75-4, E-mail from Tamara Pullin to William B. Federman, dated January 30, 2009, 12:49 p.m.). And it is difficult to see how Plaintiff can contend there was any mutual assent regarding the proposed class representatives when the allegedly "final" version of the Stipulation of Settlement that Plaintiff seeks to enforce lists different proposed class representatives than the proposed Amended Complaint filed by Plaintiff.[1] Doc. 63. Furthermore, BlueHippo was very clear that, *<u>before</u>* it would agree to any settlement, Plaintiff needed to provide a mutually agreeable Amended Complaint and a

---

[1] The Stipulation of Settlement attached to Plaintiff's Motion to Enforce lists Shawna Robbins, James Ray, and Deborah McLaughlin as the proposed class representatives. (<u>See</u> Doc. 58-3, Stipulation of Settlement). However, Plaintiff's proposed Amended Complaint entirely omits James Ray as a class representative, and instead lists Lorie Musgrave and Holly Ballard as class representatives, despite the fact neither is mentioned anywhere in the supposedly "final" Stipulation of Settlement. (<u>See</u> Doc. 63, Am. Compl. ¶¶ 7-10).

3

substantive motion addressing the issue raised by the Supreme Court's decision in Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997).  Mar. 6, 2009 letter, Ex. A to Pl.'s Motion to Enforce.  Plaintiff failed to provide such documentation or receive BlueHippo's approval thereof.

Because the evidence demonstrates that the parties had not reached agreement on *all* material terms either at the December 15, 2008 meeting or at any time subsequent to it, there was no final settlement agreement between the parties.

### B.     Absent a Final Agreement, the Purported Settlement Cannot Be Enforced

BlueHippo next objects to Magistrate Judge Wilson's recommendation that Plaintiff's Motion to Enforce Settlement Agreement be granted, because absent mutual assent on all material terms, an agreement may not be enforced.  In re De-Annexation of Certain Real Property from City of Seminole, 2009 OK 18, ¶ 8, 204 P.3d 87, 93-94.  This is especially true in a class action context, which should require not only mutual assent to all material terms, as explained above, but also a written agreement setting forth these material terms.

Magistrate Judge Wilson and Plaintiff rely heavily upon cases involving enforcement of oral agreements.  These cases, however, involve only two parties, and not class action settlements.  See, e.g., Pierce Petroleum Corp. v. Hales, 1930 OK 595, 294 P. 160 (two-party oral agreement); E. Cent. Okla. Elec. Co-op., Inc. v. Okla. Gas & Elec. Co., 1973 OK 3, 505 P.2d 1324 (same). In a regular two-party case, it is reasonable to expect a settlement to be binding where the material terms have been agreed upon even if formal documentation of the agreement is to follow.  In such an instance, the court can enforce the oral agreement even if no written document is ever produced.  However, in the class action context, it is patently unreasonable to believe that an oral agreement can bind anyone, since a settlement cannot be given even preliminary approval by the court until a comprehensive written settlement has been

4

signed and submitted to the court for review.  The settlement needs to be written so interested class members can read it in the court's docket and determine whether to object.  Walker v. Commercial Recovery Sys., Inc., 2000 WL 1810066, at *3 (N.D. Ill. 2000) ("A class action settlement agreement is a contract usually put into writing (by necessity) and *requires a formal writing*, if not for the full expression of the covenants, then to give notice to all interested parties and the court." (emphasis added)).  Indeed, the December 15, 2008 meeting concluded without even so much as a memorandum of understanding, let alone a comprehensive agreement which is a necessary pre-requisite to address the myriad of issues required for a class-action settlement. Id. at *4 ("Moreover, in the class action situation, the formal settlement documentation must address a number of detailed matters, such as what to do with unclaimed settlement proceeds, that are significant and appear not to have been addressed in the oral negotiations in this case."). Furthermore, as shown above, the parties continued to negotiate towards a final written settlement, but one was never reached.

Nor is it sensible to enforce an unsigned class settlement since to do so will create the very uncertainty that a settlement is supposed to eliminate.  Parker v. Time Warner Entm't Co., 631 F. Supp. 2d 242, 260 (E.D.N.Y. 2009) ("In assessing the Settlement, the Court should balance the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation."); Berry v. Sch. Dist. of City of Benton Harbor, 184 F.R.D. 93, 106 (W.D. Mich. 1998) (noting "settlement fosters the goals of certainty, finality and economy, which lie at the heart of our general preference for settlement of class actions").  If notice goes to the class, does it disclose that the defendant is objecting to the purported settlement and that even if the settlement is approved it will be held up in appeals not only by objectors but by the purported parties to the settlement?  This is not the regular two-party

settlement where the enforceability of the supposed settlement affects only the parties to the agreement. The decisions of the thousands of third-party absent class members are at stake. Do they opt out? Do they bring their own actions against BlueHippo? Do they stay a part of a disputed settlement that may be thrown out on appeal even if approved in the district court? No case has forced a disputed settlement in this context for good reason.

Furthermore, at the time the supposed settlement was reached, Plaintiff's counsel did not even have as clients the class representatives that they were to put forward on behalf of the class. The law is clear that the class representatives have to be informed and involved in important decisions on behalf of the class, not just class counsel. See, e.g., Woodall v. Drake Hotel, Inc., 913 F.2d 447, 451 (7th Cir. 1990) (noting that because "class members generally are not involved in settlement negotiations or even present to voice their views to the court, class members must rely on class representatives and class counsel to protect their interests"); In re Chiron Corp. Sec. Litig., 2007 WL 4249902, at *11 (N.D. Cal. Nov. 30, 2007) ("'Fair and adequate' representation requires that the class representative be both willing and able to monitor closely the conduct of class counsel during settlement negotiations"). The claims belong to the class members, not to class counsel. Thus, any decisions whether to settle and on what terms have to be made in consultation with the class representatives and with strong input from class counsel. In the present case, it is unclear who the class representatives were when this agreement was supposedly formed. The plaintiffs for the new complaint that class counsel contemplated filing had not even been chosen yet. They clearly could not have been involved in any representative consultation on the terms of the settlement, and class counsel cannot simply enter into a binding settlement on behalf of clients he has not yet even procured. To "enforce" a

supposed settlement in this context results in class counsel running litigation on their own behalf rather than on behalf of actual class representatives with responsibilities to the class.

In short, neither Plaintiff nor the Magistrate Judge has cited any case, and we are aware of none, that has enforced an oral class action settlement or deemed an unsigned written agreement to be final and binding. It was not reasonable for Plaintiff to assume a binding agreement until a final written and signed document was submitted to the court, especially when the parties had not yet reached full agreement on all material terms of the settlement and plaintiff's counsel was not yet representing the putative class members. Accordingly, the Magistrate Judge's recommendation regarding enforcement of an incomplete oral settlement agreement should be rejected.

### C.    The Court Should Not Treat Hearing Exhibit 14 as a Final Settlement

BlueHippo's final objection is Magistrate Judge Wilson's recommendation that Hearing Exhibit 14 be treated as the final settlement agreement of the parties in this matter.[2] First, as set forth in greater detail above, this was not a "final" agreement between the parties. This document merely represented the latest iteration of a proposed settlement agreement in which the parties continued to negotiate material terms. It should not be characterized as a final agreement, because to do so would result in the court supplying the terms to a settlement to which the parties had not fully agreed. Bayly, Martin & Fay, Inc. v. Pickard, 1989 OK 122, ¶ 21, 780 P.2d 1168, 1175 ("Courts cannot supply material terms of a contract or read in terms not contained therein.").

Additionally, this "agreement" should not be treated as a final settlement because it continues to propose class representatives which were not mutually agreed upon. Specifically,

---

[2] Hearing Exhibit 14 is the same as Doc. 58-3, which is the proposed Stipulation of Settlement Plaintiff attached to her Motion to Enforce as Exhibit "B".

7

Plaintiff has named Shawna Robbins as a class representative, despite BlueHippo's repeated objections to Ms. Robbins serving in this capacity. Reaching an agreement on adequate class representatives was not only necessary to the formation of a settlement agreement, but is also necessary for the settlement of any class action.

BlueHippo challenged the adequacy of Shawna Robbins as a class representative in an Opposition to Class Certification and in a Motion for Summary Judgment, both of which remain pending. Docs. 9, 33, & 42. Additionally, BlueHippo made it clear at the settlement negotiations that Ms. Robbins was an inadequate class representative. Courts may not approve a class settlement that has been negotiated by inadequate class representatives. See Robinson v. Shelby County Bd. of Educ., 566 F.3d 642, 649-50 (6th Cir. 2009) (noting "courts are not obliged (indeed, they are not permitted) to approve settlements that are . . . negotiated by inadequate class representatives"); Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1, 921 F.2d 1371, 1383 (8th Cir. 1990) (same). Additionally, the approval of a settlement class, and the class settlement negotiation process, are subject to heightened scrutiny. Amchem, 521 U.S. at 620. Given that part of the reason the Eastern District of Arkansas rejected the proposed settlement in Williams v. BlueHippo Funding, LLC, Civ. No. 4:07CV00662SWW (E.D. Ark.) was because of BlueHippo's challenges to the class representatives, BlueHippo was clear during the settlement negotiations that Plaintiff needed to propose mutually agreeable additional class representatives, and that BlueHippo would not agree to Shawna Robbins serving as a class representative. As noted above, not only have the parties failed to agree on class representative generally, but Plaintiff has continued to include Ms. Robbins as a proposed class representative over BlueHippo's objections. These actions make it unlikely that the Court would approve of any proposed settlement, and also further demonstrate that the parties had not

mutually assented to all material terms necessary for a final settlement. The Court should, therefore, reject Magistrate Judge Wilson's recommendation that Hearing Exhibit 14, which names Ms. Robbins as a proposed class representative, be treated as the final agreement between the parties.

## CONCLUSION

For the foregoing reasons, the Court should reject Magistrate Judge Wilson's *Report and Recommendations*, and find that there is no enforceable settlement agreement between the parties. Defendants request any further relief to which the Court may find them justly entitled.

*/s/ John N. Hermes*
John N. Hermes, OBA #4133
Tamara Schiffner Pullin, OBA#21462
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102
Telephone:    (405) 235-9621
Facsimile:     (405) 235-0439

ATTORNEYS FOR DEFENDANTS BLUEHIPPO FUNDING, LLC AND BLUEHIPPO CAPITAL, LLC

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 6th day of October 2009, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

William B. Federman, Esq.
Jennifer F. Sherill, Esq.
FEDERMAN & SHERWOOD
10205 N. Pennsylvania
Oklahoma City, OK 73120
Email: wfederman@aol.com
Email: jfs@federmanlaw.com

Cornelius P. Dukelow, Esq.
ABINGTON INTELLECTUAL PROPERTY
LAW GROUP, PC
10026-A S. Mingo Rd, No. 240
Tulsa, OK 74133-5700
Email: cdukelow@abingtonlaw.com

                                      */s/ John N. Hermes*